**PERRY et ux.**

v.

**CITY OF GAINESVILLE.**

No. 15499.

Court of Civil Appeals of Texas.

Fort Worth.

April 2, 1954.

Rehearing Denied April 30, 1954.

In 1942 the United States Government acquired title to 375.35 acres of land in Cooke County, Texas. This land adjoined 82.94 acres of land, also belonging to the Federal Government, which was the site of a housing project operated in conjunction with Camp Howze, a military installation. The housing project was known as Howzeville. It was constructed to provide for the emergency housing of military personnel. After the conclusion of World War II, when Camp Howze was closed and the necessity for emergency housing for military personnel ceased to exist, the Federal Government continued to operate Howzeville as a local housing project under certain Federal laws and regulations through the City of Gainesville, Texas, as its agent.

On June 30, 1952, the Federal Government sold the 82.94 acres of land known as Howzeville to the City of Gainesville, and for a few months the City continued to operate Howzeville as a housing project of the City. In the latter part of 1952, however, the City of Gainesville discontinued the operation of such project. While Howzeville was operated, both during the war when used for the emergency housing of military personnel and subsequently as a local housing project, it was essential in connection with such operation that water, sewerage and power facilities be available.

It was during the period that the project was operated as an adjunct to the military installation that a use of the Federal Government's 375.35 acres, adjoining Howzeville, was begun. Such use was for water and sewerage purposes, and for the supplying of the electrical power essential for such purposes. A water well on such property was used as the primary source of water for Howzeville. After the City of Gainesville acquired title to the 82.94 acres constituting the site of Howzeville, and sometime prior to the discontinuance of Howzeville as a housing project, its officials conceived a plan whereby the City would use the rights (or certain of them) it had acquired in the 375.35 acres adjoining to integrate the water facilities there-

Gullett & Gullett and Robert L. Doss, Denison, for appellants.

L. V. Henry and Cecil Murphy, Gainesville, for appellee.

MASSEY, Chief Justice.

From an order granting the City of Gainesville, Texas, a writ of injunction against Mr. and Mrs. H. G. Perry, restraining them from interfering with easement rights acquired by the City from the Federal Government, the Perrys appeal.

Judgment affirmed.

by afforded (which had formerly been used solely for the benefit of Howzeville) into the municipal water system of the City itself.

On June 30, 1952 (the same date as the conveyance to the City of Gainesville of Howzeville), the Federal Government had sold and assigned to the City of Gainesville certain easements and rights, including those involved in this suit and including the use of ⅛th of an acre (located by metes and bounds) upon the 375.35 acres for a sewage lift station, and including the use of ⅟₁₇th of an acre (located by metes and bounds) for a water well site, and including the lines already located and then in use for underground water and sewer lines and in use for an overhead electric distribution line. In 1947, the Federal Government had sold the 375.35 acres of land in question to Mr. and Mrs. Perry, subject to certain rights retained, including the easement rights aforesaid. In the description of the easement rights so reserved there was no restriction of any kind as to the quantity of water to be taken from the water well site, or as to the purposes to which the water so taken might be applied by the easement owner. In the sale and assignment of such rights to the City of Gainesville in 1952, all of the Federal Government's rights which had been retained as to such use by its conveyance to the Perrys were conveyed to the City.

Pursuant to the project which had been conceived by the City of Gainesville for the water from the well in question to be integrated into the City water distribution system, the City voted and authorized a bond issue and a contract was let to accomplish the plan and everything was in readiness to go forward at the time the occasion for this suit arose. The accomplishment of the project would have resulted in the taking from the water well a great deal more water than had been necessary when its use was applied solely to the needs of Howzeville and obviously the appellants were opposed to this. It will be remembered that about the last part of the year 1952, upon the discontinuance of Howze-

ville as a Housing Project, the City of Gainesville ceased to take water from the well on the 375.35 acres, since the pipe had not been laid to transport the water elsewhere, and there was no one housed at Howzeville who had need of it. After the plan, aforesaid, had been generally publicized and was about to be begun as a project, Mr. and Mrs. Perry, through their attorneys, notified the City of Gainesville that they were proceeding to dismantle and dispose of the equipment and fixtures in connection with the water well located on their premises, that they understood that the City of Gainesville was attempting to assert some right in the equipment and fixtures and that the City should take due notice of their intentions. Their letter of notification was dated August 27, 1953. On September 5, 1953, the City of Gainesville filed its injunction suit. It sought to enjoin the Perrys from interfering with the City's unimpeded access to, and use and enjoyment of, the property of the character of easement it had received from the Federal Government, and sought the restraint of the Perrys from demolishing, dismantling, salvaging, selling or otherwise disposing of the wells and pipe lines, pipe, equipment and other property and appurtenances obtained and used in connection therewith, etc. Additionally the City prayed that the City be decreed to be the owner of the water well and personal property and permanent easements granted to it by the Federal Government pertaining to the 375.35 acres of land in question.

A temporary restraining order was granted, and after a final hearing, the District Court entered an order decreeing title and possession of the easements in question, together with all appurtenances thereto and all personal property obtained and used in connection therewith and located upon the easement premises. It was further ordered that a writ of injunction issue enjoining the Perrys from in any manner obstructing or interfering with the City's free and unimpeded access, use and enjoyment of the water well and pipe lines and easements, premises and appurtenances, and from any

possessory act in connection with the personal property.

The Perrys perfected an appeal from this judgment, and are before us as appellants.

The first point advanced by the appellants in their brief is that the trial court erred in granting the appellee City a judgment with respect to the use of the water well, which the appellee planned to integrate into the City water supply system because such plan, when effected and put in operation, will bring about the termination of the easement for the use of such well for misuser, the use contemplated by the easement retained by the Federal Government and sold and assigned to the appellee having embraced only that use necessary and incident to the supplying of water to Howzeville.

■ We overrule the point of error. In the first place, misuser alone never constitutes a premise for the termination of an easement. It would only be where the misuser, in itself, is so operative that the use for which the property is dedicated becomes impossible of execution, or whereby the objective of the use wholly fails, upon the occurrence of the misuse. Adams v. Rowles, 1950, 149 Tex. 52, 228 S.W.2d 849; Dallas County v. Miller, 1942, 140 Tex. 242, 166 S.W.2d 922. In such instances, it actually becomes by construction an abandonment because of the resultant impossibility to effectuate the purposes for which the easement theretofore existed or was created in the first instance.

In the second place, the appellants would probably have an adequate remedy at law, to wit: for damages, in the event of a misuser of an easement in instances where the misuser, in itself, was not operative as to an abandonment, or would have the remedy of injunction in the event remedy at law would be inadequate. Hoak v. Ferguson, 1953, Tex.Civ.App., Fort Worth, 255 S.W.2d 258, error refused, n. r. e.; Seastrunk v. Walker, 1941, Tex.Civ.App., Waco, 156 S.W.2d 996, error refused, w. m. Of course, no cause of action for damages has accrued for misuser in the present case where the appellee's

plan is not yet operative, and no injunction is sought by the appellants.

In the third place, there is no limitation in the easement instruments themselves, and the provisions of such instruments are not under attack, and from them we see no restriction upon the use to which the appellee might put the water it was entitled to take from the water well in question. Had the easement in this respect been restrictive as to the use to which the water taken from the well might be put, the circumstances would be different. Here there seems to be no change in the character of the easement expressly granted, and we fail to see where there is any prejudice of appellants' rights which was not within the contemplation of the instruments creating the easement.

Furthermore, under the circumstances of this case, the easement in the water well premises included the water taken from the well itself and the right to extract it as privileges incident thereto. See the authorities collated under Vol. 14 Words and Phrases, Water Rights, p. 90.

The second point advanced by the appellants is that the easements in question (the water well, sewer lines and pipe lines, and the power line easements) have been abandoned, and in view thereof the appellee had no right to maintain its suit, and the trial court erred in granting judgment for the appellee.

■ We overrule the point of error. There are no findings of fact by the trial court, and in the absence of such we will necessarily conclude that had there been such filed they would have included either a finding that the appellee did not intend (by its discontinuance of the project of Howzeville, and the use of the easements essential to its operation) to abandon and terminate its rights as the easement owner, or a finding that there was no proof of the fact that the appellee did so intend to abandon and terminate such right. Appellants do not contend that evidence was such as would compel a contrary finding. There-

fore, abandonment of the easements by the appellee is not established in this case, as mere nonuser does not, in itself, constitute an abandonment even after it has occurred, and it is essential that circumstances must also be present which prove an intent to abandon the easement rights on the part of the easement owner before it could be said that abandonment was prima facie established. 14 Tex.Jur., p. 733, sec. 37; 17 Am. Jur., p. 1026, sec. 142; 17 Am.Jur., p. 1029, sec. 144; 28 C.J.S., Easements, § 60, p. 724, Adams v. Rowles, supra; Dallas County v. Miller, supra; Henderson v. Le Duke, 1920, Tex.Civ.App., Texarkana, 218 S.W. 655, error dismissed; Seastrunk v. Walker, supra.

Under point two the appellants have pointed out that the appellee combined two theories of action in the way its suit was filed in this instance, to wit: as a trespass to try title action and as an action for injunction. They claim that trespass to try title does not lie in easement cases, and that a reversal of the case is necessary to prevent the appellee from obtaining relief without authority of law. The question is clearly unrelated to the point under which it is raised. Only the points on which appeal is predicated, as stated in appellants' brief, need be considered as presenting questions for decision by a Court of Civil Appeals where there is no occasion for reference to any assignment or cross-assignment of error, such points having the effect of waiving all errors which may have occurred in the proceedings in any other respect. Rules 374 and 418, Texas Rules of Civil Procedure; 3–B Tex.Jur., p. 121, sec. 747; DeBusk v. Guffee, 1943, Tex.Civ.App., Eastland, 171 S.W.2d 194; Brown County Water Imp. Dist. No. 1 v. McIntosh, 1942, Tex.Civ.App., Eastland, 164 S.W.2d 722; error refused, w. m., with analysis of Texas Rules of Civil Procedure in this respect. Nevertheless, from its consideration together with the whole record, it fails to present any reversible error. If the judgment is void in so far as any adjudication of title is concerned, as appellants contend, then it could be attacked in connection with any future occasion to do so, either directly or collaterally.

The judgment of the trial court is affirmed.

RENFRO, J., not participating.